Catron, Ch. J.
This legislative divorce must be treated as a judicial sentence and decree, binding on the parties; or it must *77 be taken to be void, and of no effect. Both parties recognize its binding force on them, and so the court will consider it. We then have the judgment of a power that dissolved the contract of marriage, the same as if it had been annulled by force of the act of 1799, by a judicial tribunal. When the divorce is pronounced, dissolving the bonds of matrimony by a court of justice, what is the duty of the court? “On making up the decree,” (says the 10th sec.) the court shall decree to the wife so divorced, such part of the real and personal property as they shall think proper, consistent with the nature of the case.
It is contended, this section does not., apply where the wife is in default. From mature consideration, on a former occasion, this is believed to be a mistake. The husband, of course, has taken all the goods'by the-marriage, and is entitled to the lands, if there be children of the wife, as tenant by the courtesy; and she must not be permitted to perish with hunger and cold, because frail. In every case, is the wife entitled to the protection of the court, and some provision. It is a matter, more or less, dependent on the circumstances; the statute makes no exception. But here there is not any such discretion left to the court, as where the wife has furnished cause for a divorce; this divorced wife did no such filing. Truly, from difference in habits and inclinations, two very intelligent and respectable persons, who were man and wife,"disagreed, precisely why, we cannot ascertain from this record; but that either was guilty of any conduct to furnish grounds for a divorce in a court of justice, no one pretends. , Mrs. Richardson, stands on the ground very much, so far as the present application is concerned, as other divorced females, where they had been the injured party. Not that she was injured in legal estimation; but she has not legally offended, and is most clearly entitled to the means of support from Col.. Wilson. To refuse it, would be pronouncing the tenth section of the act of 1799, a dead letter. But this *78 ;s not ¿ie principal difficulty, for the case never presented f 1 J ’ , . „ . ^ any on the statute; it is, whether shall we decree Mrs. Richardson, by partition and in fee, part of the property of Col. Wilson, or shall we order the maintenance, as decreed below? With the sum we are well enough satisfied; and under the circumstances of the wealth and age of the complainant, we think it best for both sides,, that the decree below be affirmed, and the property be only mortgaged, as property should not be decreed, furnishing a less income than some three hundred dollars, if the absolute title was vested in Mrs. Richardson.
As to the pleadings, we think they fully set forth the case; and authorize any decree, the facts set forth may justify, under the general prayer for relief.
Peck, J.
The relation which exists by the contract of marriage, creates right, and vests them in the parties, which courts in all civilized countries consider sacred. The refinement of a people, and the purity of their morals, are perhaps better tested by the regard which the laws have to the enforcement of the relative duties arising from this relation, than from any other source.
And it may safely be said, that when a people become lost to the binding obligation of the marriage contract, they are verging to a state that threatens the social compact. We may, when such a state of things can be looked upon even with indifference, reasonably calculate, that such a community is retrograding. We do not say this as a censure upon individuals, or co-ordinate branches of the ■government under which we live; but it is expressed in sober seriousness, because it is felt to be true.
By the marriage, brought before us by the pleadings in this case, Mrs. Richardson, the late wife of Col. Wilson, gave to her husband every thing she possessed. He was entitled to her property, her affection, and services, during *79 life. The dominion lie acquired, the law supposes would x , . be exercised, in the spirit of refinement, and with a view to the courtesies of life, best calculated to produce the end for which it was yielded. While the law supposed it possible that either of the parties could misbehave to the other, it certainly viewed the event as improbable, considering the refined age in which we live. But, admitting such a contingency, then the husband had power over his wife; his will was a law to her. Not that in a case of abandonment, he would exact subjection with savage force; but by a bland, persuasive, and soothing deportment, call back the wanderer, and restore the peace which had departed for a time from the domestic circle. Whenever we consider, that this power was inherent in the husband, the law calls -upon us, in such cases, to look to what he may have done. It would be endless, however, to attempt to enumerate a long train of evidence, which is usually brought to bear-in such cases, where things the most trivial are magnified, and if ' possible, the court diverted from the main inquiry.
The first question, therefore, is, what has the head of the family done. Admit it to be true, thatthe lady acted precip-itatély, .in departing from the house of her husband, the husband, without courting reconciliation, shuts the door against it. He applied to the legislature, and on his ex-parte representation and application, obtains an act dissolving the bands that had united them. Here it must be seen, that, without depth of research into books, the hus-bajid has closed the door of reconciliation Before the divorce, the law gives the wife time to repent, and moral duty expected of her to do so; but by the divorce, she is cutoff from the possibility of doing so. Whenever this point is established, we have given to us a plain way to follow. *
We are aware of what is every day urged, the omnipo-tency of the legislature; that whatever is not forbidden by the constitution,’ is left open for that body to do; but here the question is, has the legislature the power to do this, and *80 Cut off a vested right? By the divorce, Wilson places J ... ^ himselí m a condition to marry again, or, it you please* to shut Ms door against bis late wife, while he may have,. and actually does have, advantages by the act, which, otherwise, he could not claim. Still, the question recurs, are all her rights gone? This must depend upon the nature of the contract of marriage, and the act of assembly authorizing divorces; not the special act passed, which separates the parties, but upon the general law, the act of 1799, ch. 19. This was the law in existence at the time the contract was entered into; and, certainly, such parts of the act as can be brought to apply in favor of the wife, she must not be denied the benefit of.
If the legislature have, while the act of 1799 was in force, stepped in the place of judicial authority, and granted the divorce, cannot the courts of justice take up tire cause, exactly where the legislature left it, and make inquiry, as if the divorce had been then and there granted by the court. If this is not so, then may the marriage contract be considered as a mere useless ceremony, not even made with a view to those rights which are considered as attaching to it in countries where laws and constitutions are like our own; but an idle ceremony, liable to be broken in upon by one of the parties, without the consent of the other.
Wilson opposes the claim, with the special act of assembly in his hand. That act must be taken altogether; and by the very terms of the act, a right is left open to her to institute inquiry in the form she has done it; and no man, it seems to us, will pretend that without the proviso, would she have been cut off from such inquiry. Her right to a portion of the estate, must depend upon the act of assembly of 1799. The 10th section is in these words: c£It shall be the duty of the court, in making up their decree, to decree to the wife so divorced, such part of the real and personal property, as they‘Shall think proper, consistent with the nature of the case, and shall ap *81 point three freeholders to make division accordingly.” It has been made a question, to what decree this act has application. The answer is plain from the act. The. 9th section provides for a decree for alimony; this decree* when entered, is, by the terms of the act, kept under the control of the court; for, as it awaits reconciliation, the decree' under it may be considered temporary. The decree, under the language of this section, may be suspended or annulled.
But the 10th section is not temporary, it authorizes a decree for the estate, makes division thereof, and vests the wife with it, and can properly apply only to a case where the decree makes a final separation. But it is supposed, that the terms, “shall decree to the wife such part,” applies only to cases where she is the injured person, and the applicant obtaining the decree. Not so; there was no necessity for extending the provision to the husband, because he had the estate in himself; and to divest it out of him, and place it in the wife, was the object of the enactment. As she was to remain no longer his wife, so it was important she should have her portion of the estate in fee, to be used or disposed of, at her pleasure. This, it is recollected, was the construction given to the act, at Nogersville, many years since, in the case of Malony and wife, determined by this court.
In this country, we are not driven to ecclesiastical jurisdiction for rules to govern us; the provision has become statutable; and when the decree is pronounced, the act is directory, as to what shall be done. Nor can it be material in what form it has been obtained, whether by the action of judicial authority, or the more summary process of legislative enactment. When the latter form has been pursued, the courts bring the divorce before them; treat it as a decree; and then, in the language of the section above quoted, decree consistent with the nature of the case. The parties have a right to open the evidence, and unfold ■¡he circumstances which led to the separation.
*82 While no separation can be esteemed honorable to the parties, much more blame may attach to the one side than to the other. It is scarcely possible to conceive how one sustaining a character so amiable as that proved in favor of Mrs. Richardson, by the great number of respectable witnesses called, would have taken herself from the domestic circle, unless something more 'serious had transpired, than has been disclosed. Take the errors imputed to her in the proofs, and we see little to blame, except capriciousness, which, it would seem, a little soothing might have corrected; so that, upon the whole, the present complainant stands before us with a character untarnished, as far as morality is concerned, unless it was immoral, to go away. The substantive charges against her are not sustained, by any proof in the record.
We have been told, that we have no precedent for this proceeding; that inasmuch as the legislature has granted the divorce, having the power to do so; that because no decree, in the legal acceptation of the term, has been entered, that the matter ends there; and that no such case . having arisen, is an argument against the admission of the doctrine insisted on. But for this, there would be no difficulty whatever; for if we had pronounced the decree, it would have been our duty to have completed what the act commands, a division of the estate.
But counsel forget, when they urge this upon us, that the constitutionality of the act is at once raised; a question of extreme delicacy; and as the bill does not call upon us to remove the act, if unconstitutional, but is willing to treat it as if it had been a decree, which required to be perfected, in the particular, relating to a provision for the complainant, in some form, surely she might be allowed to bring into court the little remnant of the act, the proviso, and claim, in some form, the right which it implies is reserved to her.
We hear it sometimes said, there shall not be a right without a remedy. Here is a right; for the act superin- *83 duced by the respondent, contemplates it. The act of 1799, and the common law, contemplate it. And shall we hesitate to enforce the right, in a form which affords to the respondent every advantage he could ask? We think not; it is a matter for an account, and this is the proper forum to take cognizance of it.
Green, J. gave no opinion.
Decree affirmed.